CAMPBELL & WILLIAMS
DONALD J. CAMPBELL, ESQ. (1216)
J. COLBY WILLIAMS, ESQ. (5549)
JACK F. DEGREE, ESQ. (11102)
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540
      and
HUNTERTON & ASSOCIATES
C. STANLEY HUNTERTON, ESQ. (1891)
333 S. Sixth Street
Las Vegas, Nevada 89101
Telephone: (702) 388-0098
Facsimile: (702) 388-0361

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KIRK and AMY HENRY,<br><br>        Plaintiffs,<br><br>vs.<br><br>FREDRICK RIZZOLO aka<br>RICK RIZZOLO, an individual;<br>LISA RIZZOLO, an individual;<br>THE RICK AND LISA RIZZOLO<br>FAMILY TRUST,<br><br>        Defendants. | Case No. 2:08-cv-635-PMP-GWF<br><br>**PLAINTIFFS MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO RULE 45 SUBPOENA AND FOR CONTEMPT ORDER** |

   COMES NOW Plaintiffs KIRK and AMY HENRY, by and through their attorneys of record, DONALD J. CAMPBELL, ESQ. and JACK F. DEGREE, ESQ., of the law firm CAMPBELL & WILLIAMS, and hereby file the following Motion to Compel Production of Documents in Response to a Rule 45 Subpoena and for Contempt Order.

This motion is made and based upon all the pleadings and papers on file herein, together with the affidavits and exhibits attached hereto, and any and all oral arguments.

DATED this ___17th___ day of November, 2008.

                CAMPBELL & WILLIAMS

                By_____
                DONALD J. CAMPBELL, ESQ. (1216)
                700 South Seventh Street
                Las Vegas, NV 89117
                Attorneys for Plaintiffs

**POINTS AND AUTHORITIES**

## I.  INTRODUCTION

On September 30, 2008, Plaintiffs caused a Rule 45 subpoena to be served on the Custodian of Records of the law firm Patti, Sgro & Lewis. *See* Subpoena, attached hereto as Exhibit "1." It required the custodian to appear at the law offices of Campbell & Williams for deposition testimony and the production of documents on October 27, 2008. The subpoena commands the following production:

> Copies of checks, records of payment, billing invoices, engagement letters, and transmittal sheets for services performed on behalf of Fredrick Rizzolo, Lisa Rizzolo, Rick and Lisa Rizzolo Family Trust, The Power Company, Inc. and/or other related business entities between 09/20/2001 and the present. *See* Exhibit 1.

However, Defendant's counsel wrote Plaintiffs' counsel late in the afternoon on October 24, 2008, advising no appearance would be made for the deposition. *See* Letter from Mark Hafer, attached hereto as Exhibit "2." Instead, counsel incorrectly sought compliance by producing documents "that are responsive to the subpoena…along with a certificate of authenticity on or before November 3, 2008." *See* Exhibit 2. Counsel failed to produce any documents or the custodian of records for deposition testimony, which went forward at the noticed time with court reporter costs on October 27, 2008.[1] *See* Deposition of Custodian of Records for Patti, Sgro & Lewis, attached hereto as Exhibit "3." The next day, Plaintiff's responded to Defendant's counsel concerning the production unilaterally set by Defendant's counsel for November 3, 2008. In short, Defendant's counsel was made abreast that this course of action was "not acceptable and does not comply with the subpoena." *See* Letter from Donald Campbell, attached hereto as Exhibit "4."

---

[1]  Mr. George P. Kelesis, Esq., appeared for Defendant Lisa Rizzolo during this deposition.

The deposition was re-noticed with the subpoena attached. Tim Amico appeared as the Custodian of Records for Patti, Sgro & Lewis at the second deposition on November 3, 2008. *See* Deposition of Tim Amico, attached hereto as Exhibit "5." Mr. Hafer asserted Nevada Rule of Professional Conduct ("NRPC") 1.6 for objecting to both the deposition and the production commanded in the subpoena. *See* Exhibit 5 at 11:22-12:11. He then followed this objection by producing copies of checks and billing records dating back to only 2006. Additionally, a significant amount of content is redacted from the documents; this information was "blackened out" on the face of each document.

## II. ARGUMENT

### A. Objection to the Rule 45 Subpoena is Untimely

All objections are waived. A nonparty wishing to object to a subpoena duces tecum may do so by written objection or by moving the district court for a motion to quash or modify. *See Unigene Laboratories, Inc. v. Apotex, Inc.*, 2007 WL 2972931 at *2 (October 10, 2007 N.D.Cal.), a copy of which is attached hereto as Exhibit "8." The nonparty wishing to embrace either of these procedures must do so "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(c)(2)(B). "A nonparty's failure to timely make objections to a Rule 45 subpoena duces tecum generally requires the court to find that any objections have been waived." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 635 (C.D.Cal. 2005) *citing In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998); *Creative Gifts, Inc. v. UFO*, 183 F.R.D. 568, 570 (D.N.M. 1998). Alternatively, the person commanded to appear and produce documents (or the adverse party) may move the district court for a protective order. *Id.* However, these procedural protections "must be made promptly," allowing [them] to "be heard and granted before the scheduled deposition." *Unigene,* 2007

WL 2972931 at *2 *citing* The Rutter Group, *Federal Civil Procedure Before Trial*, § 11:2288 (2007).

No objection was asserted prior to the deposition; no motion to quash or modify was ever filed; no protective order was ever sought prior to the scheduled deposition. This is improper. Service of the Rule 45 subpoena was effectuated on September 20, 2008. *See* Exhibit 1. ***Timely objection was required no later than October 14, 2008.*** (emphasis added). Patti, Sgro and Lewis did nothing. Rather, the obligations imposed by the subpoena were cast aside. As a result, Plaintiff was forced to encumber additional expenses in seeking full disclosure, including but not limited to, court reporter costs for two depositions and the instant motion.

### B.     Further Noncompliance Warrants a Contempt Order

This court should order the Custodian of Records to produce all documents requested in Plaintiff's subpoena. In the absence of any adequate excuse, further non-compliance subjects the nonparty custodian to contempt of court. FRCP 45(e); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (after production is ordered, further noncompliance by a nonparty will result in civil contempt and the imposition of appropriate sanctions); *R.L. Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338 (8th Cir. 1975) (in response to subpoena duces tecum, if nonparty "was in fact errant without 'adequate excuse,' the proper course was to find him in contempt under Rule 45(f).").[2] Mr. Hafer wrongfully asserts NRPC 1.6 to obstruct Plaintiffs' narrowly tailored discovery request. NRPC 1.6 reads, in relevant part:

---

[2] The Advisory Committee notes in Fed. R. Civ. P. 45 state subsection (f) no longer exists. However, the substantive language of subsection (f) is retained in subsection (e) since the 1991 amendments to the Rule.

Page **5** of **12**

      (a)    A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent…or the disclosure is permitted by paragraphs (b) and (c).

      (b)    ***A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary:***

\* \* \* \*

      (6)    ***To comply with other law or a court order.***

(emphasis added). The common law is at odds with the position espoused by Mr. Hafer.

It is long settled a party claiming a privilege must identify specific communications and each ground which supports the claim of privilege as to every piece of evidence for which the privilege is asserted. *United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir. 1977). Blanket assertions of privilege are "extremely disfavored." *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). Moreover, the communication must be between the client and the lawyer for the express purpose of obtaining legal advice. *United States v. Plache*, 913 F.2d 1375, 1379 n. 1 (9th Cir. 1990).

Plaintiff seeks an order compelling production of documents directly relevant to proving Plaintiff's multiple causes of action.[3] Further, Mr. Hafer represents "that these are the only documents in the possession of the law firm that are responsive to the subpoena." *See* Exhibit 5 at 12:24-13:1. This misrepresents the facts. The law firm of Patti, Sgro & Lewis has

---

[3] In Plaintiffs' complaint, it is asserted that numerous transactions involving the Rizzolo entities are fraudulent and violate The Uniform Fraudulent Transfer Act ("UFTA"). *See* Complaint, attached hereto as Exhibit "6." The UFTA was adopted in Nevada in 1987. *See* NRS 112.140. The Rizzolo divorce, in particular, is one of the main component transfers used by the Rizzolos to hinder, delay, and defraud Plaintiff's collection of the settlement. ***The Rizzolos were jointly represented by Patti, Sgro & Lewis in the divorce, which culminated with the attached divorce decree.*** (emphasis added). *See* Divorce Decree, attached hereto as Exhibit "7." The documents in possession of the firm lend credence to Plaintiff's theory and were wrongfully withheld at the custodian of records deposition on November 3, 2008.

represented the Rizzolos and affiliated individuals and entities on countless numbers of legal matters over the course of many years.[4]

### C. The Documents are Not Protected from Disclosure

Mr. Amico, as custodian, acknowledged the substance of what was sought and the affirmative obligation imposed in that regard. *See* Exhibit 5 at 10:10-10:17. As will be more detailed, *infra*, the production came nowhere near compliance on any level because: (1) documents were not produced, (2) non-compliant production did not date back to the date commanded in the subpoena (September 20, 2001), (3) information was inappropriately redacted, and (4) organizational standards of Rule 45 were not met.   Notwithstanding Mr. Hafer's untimely assertion of NRPC 1.6, the common law authority discussed herein holds the documents are not subject to any privilege. As a result, the firm of Patti, Sgro & Lewis should have produced with full disclosure "*to comply with other law*." NRPC 1.6(b)(6) (emphasis added).

　　o *Billing Statements*

Billing records, absent some extraordinary justification to the contrary, may be obtained in the course of civil discovery. *See Renner v. Chase Manhattan Bank*, 2001 WL 1356192 (Nov. 2, 2001 S.D.N.Y.), a copy of which is attached hereto as Exhibit "9." In *Renner*, the court held that "billing records that attorneys submit to clients are generally discoverable, unless production will necessarily reveal client confidences." *Id.* at *8. While the objecting party declared there to be a "detailed description of services rendered," the court found that the

---

[4] Mr. Hafer's assertion that "these are the only documents in the possession of the law firm that are responsive to the subpoena" begs the question. See Exhibit 5 at 12:24-13:1. Does the firm of Patti, Sgro & Lewis engage in the joint representation of a married couple pursuing a divorce involving millions in assets, yet all the while not retain a single document pertaining thereto?

records at issue involved "a relatively terse chronological recitation" that gave no details with respect to the communications involved. *Id.* A similar holding was announced by the Ninth Circuit in *Clarke, supra*:

> "The statements contain information on the identity of the client, the case name for which payment was made, the amount of the fee, and the general nature of the services performed. Our previous decisions have held that this type of information is not privileged. *See, e.g., Salas*, 695 F.2d at 361; *Cromer*, 483 F.2d at 101-02. We find nothing in the statements that reveals specific research or litigation strategy which would be entitled to protection from disclosure."

974 F.2d at 130; *See also Bieter Company v. Blomquist*, 156 F.R.D. 173, 180 (D.Minn. 1994) (attorney billing statements were protected by neither work product nor attorney/client privilege since they were nothing more than descriptions of legal services performed and, therefore, were subject to discovery); *Chesapeake & Ohio Railway Co. v. Kirwan*, 120 F.R.D. 660, 665 (S.D.W.Va. 1988) (billing statements containing a description of work performed were not protected by attorney/client privilege). In this case, billing statements dating back to September 20, 2001, should have been produced without any redactions. They were not. *See* Exhibit 5 at 15:16-18.

- o *Copies of Checks*

Checks and bank records are also not protected by the attorney-client privilege. *Harris v. United States*, 413 F.2d 316, 319 (9th Cir. 1969). "These items were negotiable instruments in commerce and were never confidential from the time of their creation." *Id. citing United States v. Judson*, 322 F.2d 460, 463 (9th Cir. 1963). The redactions on the Rizzolo checks are not justified since the attorney-client privilege does not extend to this information. This information is not confidential because the Rizzolos knew that by writing the check "it would set afloat on a sea of strangers." *Id.* Therein lies the point. The Rizzolos and their

representatives at Patti, Sgro & Lewis knew the check would be viewed by countless numbers of individuals at their respective banks and the clearing house, eliminating any confidentiality. *Id.* As such, checks dating back to September 20, 2001 should have been produced without any redactions. They were not. *See* Exhibit 5 at 14:8-14.

- o *Engagement Letters*

The engagement letters for all services rendered by the firm for Rizzolo and the related individuals and entities are not protected. *United States v. Boulware*, 203 Fed.Appx. 168, 170 (9th Cir. 2006). "As a general rule, client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege." *United States v. Blackman*, 72 F.3d 1418, 1424 (9th Cir. 1995) *quoting Ralls v. United States*, 52 F.3d 223, 225 (9th Cir. 1995); *see also In re Michaelson*, 511 F.2d 882, 893 (9th Cir. 1975) (applying Nevada law) ("information concerning fee arrangements between an attorney and his client" are not protected by the attorney-client privilege).   No engagement letters were produced; not even one reflecting the joint representation in the Rizzolo divorce. *See* Exhibit 5 at 17:21.

- o *Transmittal Sheets*

These previous holdings concerning document production in response to a Rule 45 subpoena are not limited to billing statements.  Rather, they extend to transmittal sheets as well. *See Miller v. Pruneda*, 2004 WL 3951292 (Nov. 5, 2004 N.D.W.Va.) (a copy is attached hereto as Exhibit "10") ("fax transmittal sheets are not protected" and the information sent is only privileged under the attorney-client privilege if "the information is advice sought by the client from his attorney in his capacity as a legal adviser."); *Shaffer v. Northwestern Mut. Life Ins. Co.*, 2006 WL 2432110 (August 21, 2006 N.D.W.Va.) (a copy is attached hereto as

Exhibit "11") ("[transmittal communications] are not protected by the work product doctrine because they were not prepared in anticipation of litigation."). Patti, Sgro & Lewis would be hard pressed to contend no transmittal sheets existed.[5] In any event, none were produced. *See* Exhibit 5 at 18:7.

### C.    Other Justifications for a Contempt Order

The subpoena expressly commanded production of all documents dating back to September 20, 2001, which is the date of the underlying incident giving rise to a number of legal proceedings. The few documents produced only date back to 2006. The divorce decree was executed in June 2005. *See* Exhibit 6. Also, the documents that were produced did not meet the standards set forth in Fed. R. Civ. P. 45(d)(1)(A) which require a "person responding to a subpoena…to organize and label them to correspond to the categories in the demand." There were no Bate stamps and material information was blackened out on both the checks and billing records. When counsel attempted to conduct a meet and confer discovery conference on the record regarding the information blackened out, Defendant's counsel insisted on an off the record discussion. Accordingly, Plaintiff's counsel made the following record after consulting with Defendant's counsel:

> "We just conducted a meet and confer pursuant to the Federal Rules of Civil Procedure.
>     I have been informed by Mr. Hafer that, with respect to the checks, the matters that have been blackened out and redacted are account numbers, routing numbers on the checks, as well as the name of account holders.

---

[5] In response to Plaintiff's First Set of Requests for Production, the Defendant produced thousands of pages of documents, none of which appears relevant to the instant suit. However, included in this production were countless numbers of transmittal sheets with messages documenting the precise documents included within each fax. Therefore, it is evident Patti, Sgro & Lewis in fact maintain transmittal sheets despite Mr. Hafer's assertion to the contrary.

> With respect to the billing statements, all that did not relate to the Rizzolo divorce and/or the Crazy Horse suit, I'm not sure which one that is, have been redacted as well.
> ***The records, according to Mr. Hafer, only go back to, I guess this is '06 or so, is because the record keeping in Patti & Sgro is – to use his words – chaotic and that they have moved.***
> We believe that this production is woefully inadequate. We believe that documents are being withheld from us. We further believe that there has not been a diligent search for the records that would be compliant with that required under the Federal Rules of Civil Procedure."

See Exhibit 5 at 20:15-21:10 (emphasis added).

The custodian should be ordered not only to produce organized copies of the documents dating back to the relevant date, but unredacted versions as well. When the basis is unclear for the redaction, the court will compel the production of unredacted copies. *See Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 29, 35 (D.Conn. 2003) (when defendant claimed the redactions were relating to information not relevant to the instant suit, the court required an in camera inspection). The aforementioned inadequacies only add to the dilatory tactics employed by Defendant's counsel.

### III.   CONCLUSION

Accordingly, it is respectfully requested that Patti, Sgro & Lewis be directed to produce said documents forthwith so that the Plaintiffs may conduct additional, meaningful discovery relating to the legal representation of Rick Rizzolo, Lisa Rizzolo, Rick and Lisa Rizzolo Family Trust, The Power Company, Inc., and any other related individuals or entities, in addition to an

. . . .

. . . .

. . . .

Order holding Patti, Sgro & Lewis in contempt.

DATED this ___17th___ day of November, 2008.

                                  CAMPBELL & WILLIAMS

                                  By_____
                                  DONALD J. CAMPBELL, ESQ. (#1216)
                                  J. COLBY WILLIAMS, ESQ. (#5549)
                                  JACK F. DEGREE, ESQ. (#11102)
                                  700 South Seventh Street
                                  Las Vegas, NV 89101
                                  Attorneys for Plaintiffs