UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KIRK AND AMY HENRY, ) | |
| ) | |
| Plaintiffs, ) | Case No. 2:08-cv-00635-PMP-GWF |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| FREDRICK RIZZOLO, aka RICK RIZZOLO, *et al.*,) | **Motion to Compel - #128** |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court on Plaintiff Kirk Henry's Motion to Compel Lionel Sawyer & Collins to Produce Documents in Response to Rule 45 Subpoena (#128), filed on June 5, 2009 and Lionel Sawyer & Collins' Response to Motion to Compel (#133), filed on June 22, 2009.  The Court scheduled a hearing on this motion for July 13, 2009 at 10:00 A.M.  Having reviewed the motion and response, the Court finds that this matter is suitable for resolution without hearing.  The Court therefore vacates the hearing as to this motion, only, and issues this order regarding Plaintiffs' Motion to Compel (#128).

**BACKGROUND AND DISCUSSION**

Plaintiffs allege that Defendants Rick Rizzolo and Lisa Rizzolo conspired to conceal or alienate ownership of their assets to avoid or frustrate Plaintiffs' efforts to recover damages arising out of injuries Kirk Henry suffered during an assault and battery attack at the Crazy Horse Too Gentleman's Club in September 2001.  In their underlying state court action against the Crazy Horse Too and Rick Rizzolo, the Plaintiffs alleged that the corporation that owned the Crazy Horse Too was the alter ego of Defendant Rick Rizzolo.  At the time of the alleged attack and the filing of the Henry's state court action in October 2001, Defendants Rick Rizzolo and Lisa Rizzolo were married to each other.

1  Plaintiffs allege that in furtherance of the conspiracy, Mr. and Mrs. Rizzolo formed a family trust to
2  which they transferred their assets.  Plaintiffs allege that the Rizzolos thereafter entered into a 2005
3  collusive divorce decree pursuant to which Defendant Liza Rizzolo received most of the community
4  assets that were of any appreciable value except for the assets of the Crazy Horse Too which were
5  transferred to Defendant Rick Rizzolo.  One of the disputed issues in this case is whether Rick
6  Rizzolo's receipt of the assets of the Crazy Horse Too, which was then the subject of a federal criminal
7  investigation as well as a defendant in the Henrys' civil action, was a fair and equitable share of the
8  Rizzolos' community property.  Based on discovery conducted in this case, Plaintiffs now allege that
9  following their 2005 divorce Lisa Rizzolo and Rick Rizzolo transferred their assets to separate
10 individual trusts in a further effort to protect their assets from execution by the Plaintiffs.
11         Attorney John Dawson, who is now a member of the Lionel Sawyer & Collins law firm,
12 reportedly provided estate planning/trust preparation services for Mr. and Mrs. Rizzolo prior to their
13 2005 divorce and also prepared separate individual trust documents for Lisa Rizzolo and Rick Rizzolo
14 after their divorce.  According to the May 12, 2009 deposition testimony of Defendant Lisa Rizzolo,
15 Attorney Dawson also prepared promissory notes and arranged for the transfer of loan funds from Lisa
16 Rizzolo's trust to Rick Rizzolo.  *See Defendant Lisa Rizzolo's Opposition to Plaintiffs' "Renewed"*
17 *Motion to Compel (#134), Exhibit "E."*
18         On May 13, 2009 Plaintiffs caused a Rule 45 subpoena to be served on the custodian of records
19 of Lionel Sawyer & Collins for production of the following records:
20         Copies of checks, records of payment, billing invoices, engagement
           letters, statements of account, fax transmittal sheets, wire transfer records,
21         loan agreements, and promissory notes, relating to any financial
           transaction executed on behalf of Frederick aka "Rick" Rizzolo, Lisa
22         Rizzolo, The Rick and Lisa Rizzolo Family Trust, The Rick Rizzolo
           Irrevocable Trust, The Rick J. Rizzolo Separate Property Trust, The RLR
23         Trust, and/or The Lisa M. Rizzolo Separate Property Trust between
           January 1, 2001 to the present.
24
25 *Motion to Compel (#128), Exhibit "1."*
26         In response to the subpoena, attorney Paul Hejmanowski, Esq. of Lionel Sawyer & Collins
27 notified Plaintiffs' counsel by letter dated May 21, 2009 that the law firm was ethically obligated to
28 assert the Rizzolos' attorney-client privileges to the subpoena and would not produce the subpoenaed

1 records to Plaintiffs in the absence of (a) written authorization by the clients to do so or (b) a court order
2 declaring the privilege inapplicable and directing production.  Mr. Hejmanowski's letter was copied to
3 Rick Rizzolo and counsel for Lisa Rizzolo. *Motion to Compel (#128), Exhibit "2"*.  Plaintiffs
4 thereupon filed their instant motion to compel.   In the *Response to Plaintiffs' Motion to Compel*
5 *(#133)*, Mr. Hejmanowski states that he was informed in a telephone conversation with Rick Rizzolo's
6 former attorney in this action, Mark Hafer, Esq., that Rick Rizzolo does not intend to oppose the motion
7 to compel.  Lionel Sawyer & Collins has not heard from Lisa Rizzolo or her counsel regarding the
8 subpoena or the motion to compel.  Neither Defendant Rick Rizzolo nor Defendant Lisa Rizzolo have
9 filed oppositions to Plaintiffs' motion to compel the production of records from Lionel Sawyer &
10 Collins  or moved for a protective order against production of the records.

11     The subpoena served on Lionel Sawyer & Collins does not by its terms call for the production of
12 confidential attorney-client communications between Rick Rizzolo and/or Lisa Rizzolo and their
13 attorneys.  As this Court stated in its order regarding a substantially similar subpoena that Plaintiffs
14 served on the Rizzolos' former attorneys, Patti, Sgro & Lewis:

> Checks, records of payment and attorney billing records do not generally fall within the scope of the attorney-client privilege or the work-product doctrine.  Checks are negotiated through a bank and, therefore, are not confidential communications.  Nor are they likely to contain information protected by the work-product doctrine. *Harris v. United States*, 413 F.2d 316, 320 (9th Cir. 1969).  In *Clark v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 130 (9th Cir. 1992), the Ninth Circuit stated that the identity of the client, the amount of the fee, the identification of payment by case file name and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege.  *Clark*, 974 F.2d at 129 (citations omitted).  The court stated, however, that "correspondence, bills, ledgers, statements and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege."  The burden is on the party asserting the privilege to demonstrate which portions of the records are privileged.  *See also Renner v. Chase Manhattan Bank*, 2001 WL 1356192 *8 (S.D.N.Y. 2001); *Bieter Company v. Blomquist*, 156 F.R.D. 173, 180 (D. Minn. 1994); *Chesapeake & Ohio Railway Co. v. Kirwin*, 120 F.R.D. 660, 665 (S.D.W.Va. 1988).
>
> Courts have also held that attorney engagement letters or retainer agreements are not protected by the attorney-client privilege or work-product doctrine.  *United States v. Blackman*, 72 F.3d 1418, 1424 (9th Cir. 1995); *In re Michaelson*, 882 F.2d 882, (9th Cir. 1975).  Similarly, transmittal sheets may or may not contain privileged information. *Miller v. Pruneda*, 2004 WL 3951292 (N.D.W.Va. 2006); *Shaffer v.*

*Northwestern Mutual Life Ins. Co.*, 2006 WL 2432110 (N.D.W.Va. 2006).

*Order (#52)*, filed December 28, 2008.

Likewise loan agreements, promissory notes or other documents evidencing financial transactions do not by their nature constitute confidential attorney-client communications. It does not appear, therefore, that the subject subpoena seeks the production of confidential communications between the Rizzolos and their attorneys. To the extent that the documents listed in the subpoena may contain confidential attorney-client communications, the Defendants have not objected to the subpoena or instructed Lionel Sawyer & Collins to protect their privileges by providing a privilege log of those portions which may contain confidential attorney-client communications. The Defendants therefore have waived the attorney-client privilege to the extent it applies to the contents of the records described in the subpoena. Nothing stated herein, however, is intended to require production of privileged or nonprivileged records that are not within the scope of the foregoing subpoena such as, for example, a written legal opinion rendered to the Rizzolos by their estate or trust planning counsel. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Kirk Henry's Motion to Compel Lionel Sawyer & Collins to Produce Documents in Response to Rule 45 Subpoena (#128) is **granted** in accordance with the foregoing statements in this Order. Lionel Sawyer & Collins is hereby ordered to promptly produce the records in accordance with the subpoena.

**IT IS FURTHER ORDERED** that the hearing on July 13, 2009, as it relates to Plaintiff's Motion to Compel (#128) **only**, is hereby **vacated.**

DATED this 29th day of June, 2009.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge