# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| KIRK AND AMY HENRY, | |
| Plaintiffs, | Case No. 2:08-cv-00635-PMP-GWF |
| vs. | **ORDER** |
| FREDRICK RIZZOLO, aka RICK RIZZOLO, *et al.*, | **Motion for Rule 37(b) Sanctions – #371** |
| Defendants. | |

This matter is before the Court on Plaintiffs' Motion for Rule 37(b) Sanctions for Defendant Rick Rizzolo's Failure to Comply With Order (#371), filed on May 11, 2010; Defendant's Opposition to Plaintiffs' Motion for Rule 37(b) Sanctions for Failure to Comply With Order (#389), filed on June 2, 2010; and Plaintiffs' Reply in Support of Motion for Rule 37(b) Sanctions (#397), filed on June 8, 2010. The Court conducted a hearing in this matter on June 14, 2010. At the conclusion of that hearing, the Court directed counsel to supplement the record with the depositions and documents referenced in the attorneys' arguments. Plaintiffs filed their Supplement to the Motion for Sanctions (#404) on June 21, 2010. Defendant filed supplemental discovery responses both before and after the hearing. *See* Docket Nos. 379, 394, 398, 406, and 416.

## BACKGROUND

Plaintiffs Kirk and Amy Henry filed an underlying Nevada district court lawsuit against Frederick Rizzolo, aka Rick Rizzolo, and the Power Company, Inc., d/b/a The Crazy Horse Too in October 2001 to recover damages for severe bodily injuries that Kirk Henry sustained on September 20, 2001 when he was allegedly assaulted and battered by agents of Mr. Rizzolo and the

Crazy Horse Too. The Henrys subsequently entered into a $10 million settlement with Rick Rizzolo and the Power Company in July 2006. The settlement agreement provided for an initial payment of $1 million and that the $9 million balance would be paid from the proceeds of the sale of the Crazy Horse Too nightclub which was seized by the Federal Government. The initial payment of $1 million was made to the Henrys. The City of Las Vegas subsequently revoked the business and liquor licenses of the Crazy Horse Too, however, and the nightclub has not yet been sold. Accordingly, the Henrys have not received the $9 million balance owed under the settlement agreement.

In this action, Plaintiffs allege that Defendants Rick and Lisa Rizzolo engaged in fraudulent transfers of their community assets in an attempt to shield them from Plaintiffs' claim. Plaintiffs allege that shortly after the Henrys filed the underlying suit in October 2001, Rick and Lisa Rizzolo formed a "so-called 'family trust'" to which they transferred their assets. *Complaint (#1)*, ¶ 13. Plaintiffs further allege that the Rizzolos entered into a sham 2005 divorce decree which awarded Lisa Rizzolo "nearly every listed community asset" except for the Crazy Horse Too which Defendants knew would be subject to forfeiture to the Government. *Id.*, ¶ 15. Rick Rizzolo also agreed to pay Lisa Rizzolo $5 million in alimony, secured by his interest in the Crazy Horse Too, with the knowledge that he would default on this obligation and thereby further diminish the assets that would be available to pay damages to the Henrys. *Id.*, ¶ 17. Plaintiffs also allege that Rick Rizzolo "engaged in numerous cash transactions involving millions of dollars in the form of 'loans', gambling 'debts' and other third party transactions, all of which were designed to further obscure and conceal the nature, extent and location of his assets." *Id.,* ¶ 18. Defendants deny these allegations and assert that at the time of the Rizzolo's 2005 divorce, the Crazy Horse Too business was worth substantially more than the property received by Lisa Rizzolo. Defendants also argue that proceeds from the forfeiture sale of the Crazy Horse Too would have been sufficient to pay the Henrys' settlement, but for the Government's failure to preserve its business licenses.

. . .

. . .

. . .

Plaintiffs served interrogatories and requests for production of documents on Defendant Rick Rizzolo on October 1, 2008.[1] Mr. Rizzolo, who was represented at that time by the law firm of Patti, Sgro & Lewis, objected to most of Plaintiffs' discovery requests on the grounds that they were irrelevant and not calculated to lead to the discovery of admissible evidence. Mr. Rizzolo served a supplemental response to the requests for production of documents on December 8, 2008 in which he restated his objections, but also produced some of his federal income tax returns in response to Request No. 1. He also apparently produced some documents relating to investment accounts in response to Request No. 7 and some documents relating to bank accounts in response to Request No. 23.

On December 9, 2008 Plaintiffs filed a motion to compel Mr. Rizzolo to respond to the discovery requests. Prior to the hearing on that motion, Mr. Rizzolo served supplemental answers to interrogatories on December 29, 2008. Mr. Rizzolo again objected to the interrogatories, but provided answers to certain of them. In answer to Interrogatory No. 8, which asked for information regarding his current bank accounts, Mr. Rizzolo stated he had an account at Nevada State Bank which had a balance of $2,178.06, but which had been seized by the IRS. He stated that no other accounts exist. According to his answer to Interrogatory No. 9, Mr. Rizzolo also produced some documents regarding other bank accounts he had held in the past.

Interrogatory No. 12 asked Defendant to list any property he holds or previously held as trustee of a testamentary or inter vivos trust since September 20, 2001, and to identify any trust he created or contributed to for the benefit of others since September 20, 2001. Mr. Rizzolo answered this interrogatory by stating that at one time he and his former wife, Lisa Rizzolo, created a family trust for estate planning purposes. He stated that he was informed that the trust was never funded with assets other than possibly the family home prior the Rizzolo's 2005 divorce. Mr. Rizzolo stated that he was informed and believed that there was no such trust in existence today, i.e. on the date of his answer. Interrogatory No. 17 asked Mr. Rizzolo whether at any time since September

---

[1] Copies of Plaintiffs' discovery requests and Defendant Rick Rizzolo's discovery responses were filed as a supplement to Plaintiffs' Renewed Motion to Compel (#279) on March 2, 2010. *See Supplement to Renewed Motion to Compel (#301).*

3

20, 2001, he had entered into any transaction with his former spouse or any other relative involving the transfer, conveyance, assignment or other disposition of his real or personal property. Mr. Rizzolo answered this Interrogatory by stating that after the divorce he had no knowledge of what his former wife did with her assets.

The undersigned magistrate judge denied Plaintiffs' motion to compel without prejudice on February 3, 2009 based on his doubt whether Plaintiffs had a viable claim under the Nevada Uniform Fraudulent Transfers Act ("UFTA"). The district judge overruled that order on March 23, 2009, however, and granted Plaintiffs' motion to compel. *Order (#117)*. On April 20, 2009, Mr. Rizzolo, who was no longer represented by counsel, served a handwritten supplement to his answers to interrogatories and requests for production. In answer to Interrogatory No. 6 which asked Mr. Rizzolo to "list any business you have an ownership interest in," Mr. Rizzolo stated that "I have no interest in any business other than the seized Power Company Inc. Crazy Horse Too and seized RicRiz LLC which owned the shopping center were (sic) Crazy Horse Too is located." In answer to Interrogatory No. 7, which asked Mr. Rizzolo to list all stocks, bonds or other securities that he owned in any company, firm or corporation, he identified himself as a manager of Lions Limited, LLC which owned a Mercedes automobile valued at fifty to sixty thousand dollars. Mr. Rizzolo again supplemented his answer to Interrogatory No. 12 regarding trusts, by stating that he believed there was a family trust formed years ago by attorney John Dawson, but that the trust was never funded. He also stated that he was previously a trustee for his father Bart Rizzolo, but could no longer serve as a trustee because of his felony conviction.

In October 2009, Mr. Rizzolo retained attorney Kenneth Frizzell to represent him in this action. On or about January 4, 2010, Mr. Rizzolo served his Second Supplemental Answers to Plaintiffs' Request for Production. In response to Request No. 6, Mr. Rizzolo provided statements for bank accounts for Lions Limited Partnership, and statements for certain investment accounts. On January 4, 2010, Mr. Rizzolo also served his Third Supplemental Answers to Plaintiffs' Interrogatories. Mr. Rizzolo supplemented his previous answers by listing bank accounts and investment accounts which he currently or previously owned, vehicles that he presently or previously owned including a 1955 Corvette automobile that he sold in August 2008, a life

insurance policy on his life owned by Lisa Rizzolo, and his retirement/investment accounts.

On February 5, 2010, Plaintiffs filed their renewed motion to compel answers to interrogatories and requests for production from Mr. Rizzolo. Mr. Rizzolo served his Third Supplemental Answers to Plaintiffs' Request for Production on February 25, 2010. In this supplement Mr. Rizzolo produced a copy of the registration for the Mercedes vehicle owned by Lions Limited, LLC. He also produced partial statements for his American Express and MasterCard charge accounts. He also provided Plaintiffs with a blanket release form to allow them to obtain any other documents which they believe are relevant. On March 12, 2010, the Court granted Plaintiffs' Renewed Motion to Compel. *Order (#314)*. The Court ordered Mr. Rizzolo to provide additional information and produce documents regarding his bank accounts, credit card accounts and investment accounts. *Id.*, pp. 6-8. The Court also ordered Mr. Rizzolo to provide additional information and documents, to the extent they exist, regarding the August 2008 sale of the 1955 Corvette automobile, automobile insurance policies, loans and documents relating to his living arrangements, and allowances provided to his son.

In their renewed motion to compel, Plaintiffs also provided information about the "RLR Trust," the existence of which has been established during discovery. This trust had an account at the Capital Security Bank Limited, a foreign bank in the Cook Islands located in the South Pacific.[2] Plaintiffs further state that in 2008 Mr. Rizzolo deposited $990,000 into this account from the proceeds of the sale of his interest in a Philadelphia club. *See Motion (#279)*, pp. 6, 13. The Court ordered that to the extent that Mr. Rizzolo controls "The RLR Trust," he should be able to obtain trust documents and the trust's bank account statements, and produce them to Plaintiffs. The Court, accordingly, ordered Defendant to supplement his discovery responses by providing a full and complete answer to Interrogatory No. 12, regarding his former or current interest as trustor, trustee or beneficiary in "The RLR Trust" and to provide all documents in his possession, custody

---

[2] Lisa Rizzolo's trust, the LMR Trust, also has an account in this Cook Islands bank. According to Ms. Rizzolo's deposition testimony, she sold most of the securities and investment accounts awarded to her in the 2005 divorce and transferred the proceeds to the LMR Trust's bank account in the Cook Islands.

or control relating to that trust, including a complete copy of its bank account statements. Alternatively, the Court ordered Mr. Rizzolo to provide the Plaintiffs with a complete statement as to why he is unable to produce documents relating to "The RLR Trust," including its bank account statements. The Court also ordered Mr. Rizzolo to provide full and complete information about his interest in the Philadelphia club or "enterprise" and the $990,000 he reportedly received in relation to that enterprise. *Order (#314)*, pp. 9-10.

In their Supplement to the Motion for Sanctions (#404), filed on June 21, 2010, Plaintiffs provided the Court with the depositions of Lisa Rizzolo and the Rizzolos' estate planning/asset protection attorney, John Dawson, as well as documents relating to the Rizzolos' trusts and trust account transactions. These depositions and documents show that Mr. Rizzolo, through Lions Limited, LLC, wired $990,000 to the RLR Trust account at Capital Security Bank in the Cook Islands on or about April 21, 2008. Within a short time after the deposit of the $990,000 into the RLR Trust account, most of it was paid out. One Hundred Thousand Dollars ($100,000) was paid to Patti, Sgro & Lewis for attorneys fees. Six Hundred Thousand Dollars ($600,000) was paid to Lisa Rizzolo's trust, the LMR trust, for loans that she had authorized and requested to be made to Mr. Rizzolo. Two Hundred Thousand Dollars ($200,000) was paid to Mr. Rizzolo's father in repayment of a loan. The remaining balance in the account of $89,850 was wired to Mr. Dawson's trust account in July 2008 at Mr. Rizzolo's request, for purposes of covering his living expenses and paying Mr. Dawson's attorney's fees.

Mr. Rizzolo served his Supplemental Response in Compliance with Order (#314) on May 18, 2010. *See Supplement (#379)*. According to this supplement, Mr. Rizzolo provided additional documents in compliance with Order (#314), including documents relating to promissory notes, wire transfers and transactions involving Mr. Rizzolo, the LMR Trust and the RLR Trust. On June 4, 2010, Mr. Rizzolo served his Seventh Supplemental Answers to Plaintiff's Interrogatories (#394) in which he provided statements and other documents concerning his investment interests in Energy Transfer Partners, LP and Primerica. On June 14, 2010, Mr. Rizzolo served his Eighth Supplement in Continued Compliance with Order #314 (#398). He attached to this supplement a letter from Primerica regarding the time it would take to provide complete statements for the Primerica

account. On June 25, 2010, Mr. Rizzolo served his Ninth Supplement in Continued Compliance with Order #314 (#406), which attached a print-out history for the Primerica account. It does not appear, however, that Mr. Rizzolo complied with this Court's March 12, 2010 order that he produce a complete copy of the RLR Trust's bank account statements. *See Order (#314)*, p. 10.

## DISCUSSION

In their Motion for Rule 37(b) Sanctions (#371), Plaintiffs ask the Court to enter a default judgment against Defendant Rick Rizzolo based on his willful violation of Order (#314). Although Plaintiffs assert that Mr. Rizzolo generally failed to comply with the order in regard to documents or information relating to his bank accounts, credit card accounts and investment accounts, the primary focus of the motion was Mr. Rizzolo's alleged failure to produce documents or information regarding the RLR Trust and other trusts. As set forth above, subsequent to the filing of the motion for sanctions, Mr. Rizzolo, through his counsel, provided additional documents in compliance with the Court's order on a rolling basis. This included providing some documents relating to the RLR trust and apparently relating to the the proceeds that Mr. Rizzolo received in or about April 2008 from the sale of his interest in a topless nightclub in Philadelphia, Pa. It does not appear, however, that Defendant Rizzolo has produced the bank statements from the RLR Trust bank account in Capital Security Bank Limited located in the Cook Islands.

Fed.R.Civ.Pro. 37(b)(2) provides that if a party fails to obey an order to provide or permit discovery, the court may make such orders in regard to the failure as are just. The rule includes a list of sanctions that the court may impose, including the severe sanctions of dismissing the action or entering a default judgment. In regard to the imposition of severe sanctions, *Henry v. Gill Industries,* 983 F.2d 943, 948 (9th Cir. 1993) states:

> "Because the sanction of dismissal is such a harsh penalty, the district court must weigh five factors before imposing dismissal: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Porter v. Martinez*, 941 F.2d 732, 733 (9th Cir. 1991) (citations and internal punctuation omitted).

. . .

. . .

The key factors are prejudice and the availability of lesser sanctions. *Henry,* 983 F.2d at 948, *citing Wanderer v. Johnson*, 910 F.2d 652, 656 (9th Cir. 1990). For dismissal or default to be proper, the conduct to be sanctioned must also be due to willfulness, fault or bad faith by the losing party. Disobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith or fault. *Henry,* 983 F.2d at 947-48, *citing Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985). In deciding whether dismissal or default is warranted, the court may consider all of the offending party's discovery conduct. *Henry*, 983 F.2d at 947, *citing Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990).

The requesting party suffers prejudice if the responding party's discovery violations impair the requesting party's ability to go to trial or threaten the rightful decision of the case. *Henry*, 983 F.2d at 948. *Anheuser-Busch, Inc. v. Natural Beverage Distributors, Inc.*, 69 F.3d 337, 348 (9th Cir. 1995), states that the severe sanction of dismissal is warranted where a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings. In that case, the court held that plaintiff was prejudiced by defendant's failure to produce the documents because it was forced to rely on incomplete and spotty evidence in presenting its defense to the counterclaim. *Anheuser-Busch, Inc.,* 69 F.3d at 353-354. The court also rejected defendant's argument that plaintiff was not prejudiced because the documents were produced two months before the scheduled commencement of trial. The court noted that it has "squarely rejected the notion that a failure to comply with the rules of discovery is purged by belated compliance." The Ninth Circuit summed up the basis for imposing severe sanctions in *Valley Engineers Inc. v. Electric Engineering Company*, 158 F.3d 1051, 1057-58 (9th Cir. 1998) as follows:

> What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations "threaten to interfere with the rightful decision of the case." *Adriana*, 913 F.2d at 1412. While contumaciousness toward the court needs a remedy, something other than case-dispositive sanctions will often suffice. Dismissal is appropriate where a "pattern of deception and discovery abuse made it impossible" for the district court to conduct a trial "with any reasonable assurance that the truth would be available." *Id.,* at 1057-58, *citing Anheuser-Busch, Inc.,* 69 F.3d at 352.

. . .

. . .

Defendant Rick Rizzolo's discovery responses in December 2008 and April 2009 regarding his interests in testamentary or inter vivos trusts were clearly deceptive. At the time of these responses, Mr. Rizzolo must have known of the existence of the RLR Trust and that he had transferred $990,000 into the RLR Trust's bank account in April 2008, which shortly thereafter was withdrawn at his request to pay his attorneys fees, to repay loans from Lisa Rizzolo and her trust, to repay a loan from his father, and to cover Mr. Rizzolo's living expenses. Rule 37(b) does not authorize entry of a default judgment solely because a party has given false or deceptive answers to interrogatories.[3] The rule, instead, authorizes the imposition of severe sanctions where the party's violation of discovery orders prejudices the opposing party's ability to proceed to trial and threatens the rightful decision of the case.

In this case, Mr. Rizzolo, through his counsel Mr. Frizzell, began supplementing his previous discovery responses even before the Court entered its second order to compel on March 12, 2010. Following the entry of that order, Defendant engaged in an ongoing supplementation of his discovery responses which continued after Plaintiffs filed their motion for sanctions on May 11, 2010. While Defendant Rizzolo's supplementation of his discovery responses is not altogether sufficient, his conduct does not demonstrate the type of willful disobedience of the court's orders that justifies entering a default judgment against him. Stated otherwise, the Court is not persuaded that the deficiencies in Defendant's compliance with the discovery orders in this case make it impossible to conduct a trial with any reasonable assurance that the truth will be available.

Nor is the Court persuaded that Mr. Rizzolo's failure to comply with his discovery obligations makes it impossible for Plaintiffs' counsel to adequately depose Mr. Rizzolo. Requiring Mr. Rizzolo to answer questions under oath at deposition regarding the disposition of his assets since September 2001, including previously undisclosed business and trust transactions, and loans

---

[3] The fact that a party has provided false answers under oath may, of course, be used to be impeach his testimony at trial and may support a finding against the party on the issues to which the false answer is relevant. In this case, for example, the trier of fact may conclude that Mr. Rizzolo's false or deceptive answers to interrogatories demonstrate an ongoing intent to conceal his assets or the disposition of those assets.

or other transactions between he and his ex-wife, may establish the necessary elements for Plaintiffs' conspiracy and fraudulent transfer claims against the Defendants. Mr. Rizzolo's testimony may also lead to the discovery and seizure of his assets. The Court will not assume that a deposition of Mr. Rizzolo will be substantially unavailing in either respect. Mr. Rizzolo may also be subject to a follow-up deposition, if necessary, in regard to additional records that are discovered as a result of his initial deposition. Finally, the threat of more severe sanctions should impress upon Mr. Rizzolo the need for him to be completely truthful during his deposition.

Plaintiffs are, however, entitled to the statements for the RLR Trust Account at the Capital Security Bank in the Cook Islands. Notwithstanding his compliance with the Court's March 12, 2010 order in other respects, Mr. Rizzolo has still not complied with that portion of the order that required him to produce those statements. An award of attorneys fees against Mr. Rizzolo for failure to comply with this portion of the Court's March 12, 2010 order is therefore justified.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Rule 37(b) Sanctions for Defendant Rick Rizzolo's Failure to Comply With Order (#371) is **denied**, in part, and **granted**, in part, as follows:

1. Plaintiffs' request that a default judgment be entered against Defendant Rick Rizzolo pursuant to Fed.R.Civ.Pro. 37 (b) is denied, without prejudice.

2. Defendant Rick Rizzolo shall produce to Plaintiffs complete bank statements for the RLR Trust Account at the Capital Security Bank in the Cook Islands, or any other financial institution account for that trust, from the date of the inception of such account(s) up to the present or through the date that the bank account(s) was closed. Defendant is further directed to take immediate action to request and/or direct the trustees of the the RLR Trust to produce the account statements. Unless extended by stipulation of the parties or court order, such statements shall be produced to Plaintiffs on or before **August 25, 2010**.

3. Defendant Rick Rizzolo is ordered to pay $1,000.00 to Plaintiffs, as and for reasonable attorneys fees on the motion for sanctions, based on his failure to comply with the Court's order requiring him to produce a complete copy of the RLR Trust's bank account

statements. Continued failure to comply with this portion of the Court's order will result in imposition of more severe sanctions, which could include granting Plaintiffs' request for entry of a default judgment.

**IT IS FURTHER ORDERED** that the discovery deadline in this case is extended until **October 8, 2010** for purposes of permitting Plaintiffs to take Mr. Rizzolo's deposition.

DATED this 10th day of August, 2010.

_____
GEORGE FOLEY, JR.
U.S. MAGISTRATE JUDGE