1
2
3
4
5          **UNITED STATES DISTRICT COURT**
6          **DISTRICT OF NEVADA**
7
8    KIRK AND AMY HENRY,                      )
9              Plaintiffs,                    )        Case No.  2:08-cv-00635-PMP-GWF
                                              )
10   vs.                                      )        **ORDER**
                                              )
11   FREDRICK RIZZOLO, aka RICK RIZZOLO, *et al.*,)   **Amended Motion to Compel - #401**
                                              )
12             Defendants.                    )
     _____)
13

14          This matter is before the Court on Defendant Lisa Rizzolo's Amended Motion to Compel

15   Answers and Responses to Defendant's First Set of Interrogatories and Requests for Production to

16   Plaintiffs and for Appropriate Sanctions (#401), filed on June 17, 2010; Plaintiffs' Opposition to

17   Lisa Rizzolo's Amended Motion to Compel and for Appropriate Sanctions (#419), filed on July 6,

18   2010; and Defendant's Reply to Plaintiff's Opposition to Motion to Compel and for Appropriate

19   Sanctions (#426), filed on July 21, 2010.  The Court conducted a hearing in this matter on August

20   4, 2010.

21                              **BACKGROUND**

22          Plaintiffs Kirk and Amy Henry filed an underlying Nevada district court lawsuit against

23   Rick Rizzolo and the Power Company, Inc. d/b/a The Crazy Horse Too in October 2001 to recover

24   damages for severe bodily injuries that Kirk Henry sustained on September 20, 2001 when he was

25   allegedly assaulted and battered by agents of Mr. Rizzolo and the Crazy Horse Too.  The Henrys

26   entered into a $10 million settlement with Rick Rizzolo and the Power Company in July 2006

27   which provided for an initial payment of $1 million and that the $9 million balance would be paid

28   from the sale of the Crazy Horse Too nightclub which was seized by the Federal Government.  The

     initial payment of $1 million was made to the Henrys.  The City of Las Vegas subsequently

revoked the business and liquor licenses of the Crazy Horse Too, however, and the nightclub has not yet been sold.  The Henrys, accordingly, have not received the $9 million balance owed under the settlement agreement.

In this action, Plaintiffs allege that Defendants Rick and Lisa Rizzolo engaged in fraudulent transfers of their assets in an attempt to shield them from Plaintiffs' claim.  Plaintiffs allege that shortly after the Henrys filed the underlying suit in October 2001, Rick and Lisa Rizzolo formed a "so-called 'family trust'" to which they transferred their assets. *Second Amended Complaint (#200),* ¶ 17.  Plaintiffs further allege that the Rizzolos entered into a sham 2005 divorce decree which awarded Lisa Rizzolo "nearly every listed community asset" except for the Crazy Horse Too which Defendants knew would be subject to forfeiture to the Government. *Id.*, ¶ 19.  Rick Rizzolo also allegedly agreed to pay Lisa Rizzolo $5 million in alimony, secured by his interest in the Crazy Horse Too, with the knowledge that he would default on this obligation and thereby further diminish the assets that would be available to pay damages to the Henrys. *Id.*, ¶¶ 21- 22.  Plaintiffs also allege that Rick Rizzolo "engaged in numerous cash transactions involving millions of dollars in the form of 'loans', gambling 'debts' and other third party transactions, all of which were designed to further obscure and conceal the nature, extent and location of his assets." *Id.,* ¶ 23. Defendants deny these allegations and assert that the Crazy Horse Too business was worth substantially more than the property received by Lisa Rizzolo in the divorce.  Defendants also argue that proceeds from a forfeiture sale of the Crazy Horse Too would have been sufficient to pay the Henrys' settlement, but for the Government's failure to preserve its business licenses.

The foregoing allegations are contained in Plaintiffs' first cause of action for Conspiracy to Defraud, which Plaintiffs allege began on or about May 24, 2005.  The Plaintiffs allege that as a result of the conspiracy they have been misled, frustrated, damaged, and defrauded in their continuing and ongoing efforts to locate assets to compensate them for their injuries. *Second Amended Complaint (#200)* ¶¶ 11-25.  Plaintiffs also allege a second cause of action for Common Law Fraud which repeats and realleges the allegations in their first cause of action for Conspiracy to Defraud. *Id.*, ¶¶ 26-29.  Plaintiffs' third cause of action alleges a cause of action for Violation of the Nevada Uniform Fraudulent Transfers Act.  As part of that claim the Plaintiffs allege that the

2

1    Defendants made transfers and otherwise incurred obligations with the actual intent to hinder, delay

2    or defraud the Henrys. *Id.*, ¶ 32.

3         Defendant Lisa Rizzolo has served interrogatories and requests for production of documents

4    on the Plaintiffs. The interrogatories generally ask Plaintiffs to state all facts, and to identify all

5    documents, upon which Plaintiffs rely in support of their claims and allegations. Ms. Rizzolo also

6    seeks information and documents relating to the Plaintiffs' knowledge of the terms of the Rizzolos'

7    2005 divorce, the Henrys' decision to enter into the underlying settlement agreement in 2006 and

8    documents relating to the Henrys' or their counsels' knowledge of or dealings with the United

9    States Government in regard to the seizure of the Crazy Horse Too business during the criminal

10   prosecution of Rick Rizzolo.

11        Plaintiffs have objected to many of Lisa Rizzolo's interrogatories on the grounds that they

12   are overbroad and unduly burdensome and/or constitute "contention interrogatories" that should

13   only be served and/or responded to at the close of discovery. Plaintiffs have also objected to Lisa

14   Rizzolo's discovery requests on the grounds that the requested information or documents are

15   irrelevant to Plaintiffs' fraud and conspiracy claims. In this latter regard, Plaintiffs recite the

16   discussion between the Court and Plaintiffs' counsel during a previous hearing relating to Lisa

17   Rizzolo's attempt to depose Plaintiffs' attorneys, Donald Campbell and Stanley Hunterton:

18              The Court . . . specifically asked Plaintiff's counsel to explain why
               the requested information would not be relevant to the fraud and
19             conspiracy claims. *Id.* at 4-6. Mr. Campbell succinctly explained
               that Plaintiffs are not alleging that they relied on specific verbal
20             representations by Defendants. Id. at 5-9. Rather, Plaintiffs relied on
               the covenant of good faith and fair dealing inherent in the settlement
21             agreement which Defendants circumvented by engaging in a variety
               of fraudulent transfers beginning with the divorce. Moreover,
22             Plaintiffs' counsel acknowledged that they were aware of
               Defendants' sham divorce and the division of property therein. *Id.* at
23             14-16. As such, the Court acknowledged that Plaintiffs would not be
               presenting testimony on such matters and barred Defendant from
24             deposing Mssrs. Campbell and Hunterton.

25             Simply put, Defendant refuses to recognize that the limited scope of
               Plaintiffs' fraud and conspiracy claims does not allow her to conduct
26             discovery on the aforementioned topics. Indeed, the discovery sought
               on the enumerated pre-settlement matters is wholly irrelevant to the
27             fraud and conspiracy claims. Accordingly, Plaintiffs entered timely
               objections to such requests. Plaintiffs further provided complete
28             responses to Defendants' discovery requests which actually pertain to

                                                    3

> subject matter encompassed by the UFTA, fraud, and conspiracy
> causes of action.  That is, Rick and Lisa Rizzolo's concerted efforts
> to conceal their assets and frustrate the Henrys' collection of the debt
> established by the settlement agreement.

*Opposition to Amended Motion to Compel (#419)*, pp. 5-6.

Lisa Rizzolo argues that her discovery requests are relevant to determining whether and to what extent the Plaintiffs relied upon any alleged misrepresentations by Defendants Rick or Lisa Rizzolo.

## DISCUSSION

### A.    Plaintiffs' Relevance Objection:

The Court first addresses the relevance of Defendant Lisa Rizzolo's discovery requests. Rule 26(b) of the Federal Rules of Civil Procedure provides that the parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense.  Although the Court previously precluded Defendant from deposing the Plaintiffs' attorneys, it did not conclude that *any* discovery relating to the Plaintiffs' knowledge or possession of information and documents relating to Defendants' assets or the transfer of their assets is irrelevant to the common law fraud or civil conspiracy claims alleged in this case.

The elements of a cause of action for common law fraud under Nevada law are set forth in *Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 111, 825 P.2d 588, 592 (1992) as follows:  (1) a false representation made by the defendant; (2) defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); (3) defendant's intention to induce the plaintiff to act or refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damage to the plaintiff resulting from such reliance.  The plaintiff has the burden of proving each of these elements by clear and convincing evidence.  *Id.*, citing *Lubbe v. Barba*, 91 Nev. 596, 540 P.2d 115 (1975).

In *Jordan v. State ex.rel. Dept. of Motor Vehicles*, 121 Nev. 44, 74-75, 110 P.3d 30, 51 (2005), the Nevada Supreme Court recognized that "an actionable civil conspiracy-to-defraud claim exists when there is (1) a conspiracy agreement, *i.e.,* 'a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming

4

another', (2) an overt act of fraud in furtherance of the conspiracy, and (3) resulting damages to the plaintiff." The court further stated that an underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud. In defending against a claim for common law fraud or a civil conspiracy based on common law fraud, the defendants are entitled to conduct discovery concerning the factual basis for the claims, including whether the evidence supports plaintiffs' assertion that they detrimentally relied upon defendants' false statements.

Plaintiffs' Second Amended Complaint does not allege any specifically false statements made by Defendant Rick Rizzolo or Lisa Rizzolo upon which the Plaintiffs relied to their detriment. Plaintiffs explain in their Opposition to Amended Motion to Compel (#419) that they do not claim that Defendants made specific verbal representations, but argue, instead, that Defendants' violation of the covenant of good faith and fair dealing in the underlying settlement agreement supports their common law fraud and civil conspiracy claims. The viability of these claims is questionable. Plaintiffs' Second Amended Complaint does not even mention the 2006 settlement agreement. Moreover, Defendant Lisa Rizzolo was not a defendant in the underlying lawsuit or a party to the settlement agreement, although she could potentially be liable on the conspiracy claim. To the extent these claims are viable, Defendant Lisa Rizzolo is entitled to conduct discovery regarding the facts and circumstances that led to the execution of the settlement agreement, including Plaintiffs' knowledge about Defendants' assets and/or transfers of assets prior to execution of the settlement agreement.[1]

. . .

. . .

---

[1] Plaintiffs' third cause of action alleges a claim under Nevada Uniform Fraudulent Transfers Act (hereinafter "UFTA"). Unlike a claim for common law fraud, the UFTA does not require proof that the defendant made a knowingly false statement upon which the plaintiff relied. Courts in other jurisdictions, however, are divided on whether a cause of action exists for civil conspiracy to violate the UFTA. *Forum Ins. Co. v. Devere Limited*, 151 F.Supp.2d 1145, 1148-49 n. 7 (C.D.Cal. 2001), citing *Summers v. Hagen*, 852 P.2d 1165, 1169 (Alaska 1993) and *McElhanon v. Hing*, 151 Ariz. 386, 728 P.2d 256, 263 (1985). *See also Double Oak Construction, LLC v. Cornerstone Development International, LLC*, 97 P.3d 140, 146-47 (Colo.App. 2004).

5

1

### B.   Interrogatories:

2      The Court now turns to Defendant's specific discovery requests and Plaintiffs' other

3 objections.  Defendant's Interrogatory No. 1 asks Plaintiffs to state with particularity all facts and

4 identify each document upon which they rely in support of their allegation in paragraph 11 of the

5 Second Amended Complaint that "[b]eginning on or about May 24, 2005, Defendants Rick and

6 Lisa Rizzolo, together with each other and with third persons acting in concert with them, . . . did

7 combine, conspire, confederate and agree together and with each other to defraud Plaintiffs and

8 each of them."  Plaintiffs objected to this interrogatory on the grounds that it is oppressive, unduly

9 burdensome and overbroad.  In particular, Plaintiffs argue that this interrogatory is a "blockbuster"

10 type of interrogatory which has been disapproved in cases such as *Hilt v. SFC., Inc.*, 170 F.R.D.

11 182, 186-87 (D.Kan. 1997) and *Grynberg v. Total S.A.*, 2006 WL 1186836, *6-7 (D.Colo. 2006).

12 Plaintiffs also objected to Interrogatory No. 1 on the grounds that it is a contention interrogatory

13 which cannot adequately be answered until the end of discovery.  In support of this objection,

14 Plaintiffs cited *In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328 (N.D.Cal. 1985).

15      District courts have broad discretion in deciding whether particular interrogatories are

16 unduly burdensome or overbroad and should not be answered.  Wright, Miller & Marcus, *Federal*

17 *Practice and Procedure: Civil* §2176 at 77 (3rd ed. 2010).  In ruling on such objections, courts apply

18 a proportionality approach that balances the burden on the interrogated party against the benefit that

19 having the information would provide to the party submitting the interrogatory.  An objection may

20 be sustained if the interrogatory objected to is adequately covered by other interrogatories.  *Id.*

21 §2174 at 64-69.

22      In *Hilt v. SFC., Inc.*, the court disapproved interrogatories which asked the plaintiff to state

23 each and every fact that supported the claims and allegations in her complaint and to identify each

24 person having knowledge of each fact and all documents supporting the allegations.  The court

25 cited an article which recommended that an interrogatory should consist of a brief, simple, direct

26 and unambiguous question dealing with one point only.  *Id.*, 170 F.R.D. at 187-88.  The court also

27 noted, however, it has upheld interrogatories directed at a discrete or specific allegation of a

28 pleading, or sometimes to an entire claim or defense.  In rejecting the subject interrogatories as

6

overbroad and unduly burdensome, the court stated that "they indiscriminately sweep an entire pleading, including allegations which are admitted, with an excessive number of interrogatories (at least 132 instead of four)." The court also held that the interrogatories required the responding party to provide a running narrative or description of the entire case, together with all knowledgeable persons and supporting documents. In *Grynberg*, the interrogatory asked the defendant to identify each denial of a material allegation and each affirmative defense, to state all material facts in support of its denials or affirmative defenses, and to identify all persons having knowledge of the same and all material documents. The court, citing *Hilt,* also held that the interrogatory was overbroad and constituted an abuse of the discovery process because it purported to ask the defendant to plead and prove its entire case, and to marshal all evidence in response to a single interrogatory.

Defendant Lisa Rizzolo's Interrogatory No. 1 is not directed *per se* at Plaintiffs' entire complaint. It is directed at paragraph 11 of the Second Amended Complaint which is Plaintiffs' introductory or general allegation that the Defendants engaged in a conspiracy to defraud the Plaintiffs. As Plaintiffs note in their opposition, the subsequent paragraphs of the complaint provide more specific allegations regarding the conduct of the Defendants upon which the conspiracy to defraud claim is based. *See Second Amended Complaint (#200)*, ¶¶ 16-19, 22. Defendant also directed interrogatories to these particular paragraphs. *See* Interrogatory Nos. 4-8. Plaintiffs likewise objected to these interrogatories on the grounds that they are unduly burdensome and overbroad. Subject to these objections, however, Plaintiffs answered the interrogatories. Subject to objection, Plaintiffs also answered Interrogatory No. 9 which asked Plaintiffs to state all facts and identify each document which supports their allegations that the conduct alleged in paragraphs 10-23 was done intentionally, willfully and with the specific intent of misleading and defrauding the Plaintiffs. Defendant does not contend that Plaintiffs' answers to Interrogatory Nos. 4-9 are inadequate. Defendant requests, however, that Plaintiffs' objections be overruled so that Defendant can rely on and use the interrogatory answers at trial.

Plaintiffs also objected to Interrogatory Nos. 1, 7, 9-14 on the ground that they are premature contention interrogatories. Rule 33(a)(2) authorizes the use of contention interrogatories

and, as Defendant notes, decisions subsequent to *In re Convergent* do not necessarily require that they be served or responded to only at the end of discovery.  *See Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 649-52 (C.D.Cal. 1997); *Lexington Insurance Co. v. Commonwealth Insurance Co.*, 1999 WL 33292943 (N.D.Cal. 1999); and *Firetrace USA, LLC v. Jesclard*, 2009 WL 73671 (D.Ariz. 1999).  *Cable & Computer Technology* states that the argument that contention interrogatories should only occur at the end of discovery is misplaced because the court can permit a party to withdraw or amend an interrogatory answer as appropriate.  The court also stated that requiring a party to respond to contention interrogatories earlier in discovery is consistent with Fed.R.Civ.Pro. 11 which requires that plaintiffs have some factual basis for the allegations in their complaint.  *Id.*, 175 F.R.D. at 652.  This case is near the end of discovery. Although some additional facts may still be revealed, Plaintiffs should know the factual basis for their allegations, the identities of the persons with knowledge of those facts, and the documents upon which they will rely in proving those facts.  It is therefore not premature to require Plaintiffs to fully answer Defendant's interrogatories subject to the right to amend their responses if additional facts are hereafter discovered.

The Court overrules Plaintiffs' objections to the interrogatories on the grounds that they are overbroad, unduly burdensome or premature contention interrogatories.  Plaintiffs' answers to Interrogatory Nos. 4-8, which address the more specific allegations in the complaint, appear to adequately respond to the information sought in Interrogatory No. 1.  Plaintiffs may therefore answer Interrogatory No. 1 by incorporating their answers to Interrogatory Nos. 4-8 unless the allegations in paragraph 11 of the Second Amended Complaint are based on additional facts and documents.  In the latter instance, Plaintiffs should describe such additional facts and documents in answer to Interrogatory No. 1.

Interrogatory No. 3 asks the Plaintiffs to set forth the facts and documents which support their allegation that Defendants Rick and Lisa Rizzolo operated the Crazy Horse Too as a criminal

racketeering enterprise.[2]  The interrogatory asks Plaintiffs to identify, in particular, the racketeering crimes committed by Lisa Rizzolo.  Plaintiffs answered by stating that Lisa Rizzolo was aware of and implicated in her husband's racketeering activities by virtue of their marriage and her knowledge of his personal and professional dealings with disreputable people.  Plaintiffs also allege that Lisa Rizzolo financially benefitted from the activities.  So long as Plaintiffs are not contending that Lisa Rizzolo personally engaged in criminal racketeering activity, Plaintiffs' answer to this interrogatory appears to be adequately responsive.  Defendant is, of course, free to argue that Plaintiffs' answer is legally insufficient to prove that Lisa Rizzolo engaged in or had knowledge of any racketeering activity.

Interrogatory No. 10 asks Plaintiffs to state all facts and identify each document relating to paragraphs 25 and 28 of the Second Amended Complaint alleging that they have been misled, frustrated, damaged and defrauded by Defendants in their continuing and ongoing efforts to locate assets to compensate them for their injuries.  Plaintiffs answered this interrogatory by referring to their answer to Interrogatory No. 9 which describes the conduct that Defendants allegedly engaged in to conceal and protect their assets from creditors such as the Plaintiffs.  Defendant seeks to compel Plaintiffs to further respond to Interrogatory No. 10 by describing how or in what manner the Plaintiffs relied upon any alleged statements or information provided by Defendants which turned out to be false and misleading.  As discussed above, Plaintiffs state that their common law fraud and conspiracy claims are not based on specific false statements made by Defendants.   In this regard, Plaintiffs' answer to Interrogatory No. 14, which is duplicative of Interrogatory No. 10, generally alleges that Lisa Rizzolo breached the duty of good faith and fair dealing in the settlement agreement by conducting numerous fraudulent transfers.  As noted previously, Lisa Rizzolo was not a party to the settlement agreement, but might be found liable on the conspiracy claim if Plaintiffs' common law fraud claim is viable.  So long as Plaintiffs are not alleging that they relied on any specific statements made by either Defendant Rick Rizzolo or Lisa Rizzolo in regard to their

_____

[2] Although Defendant included Interrogatory No. 2 in her motion to compel, Defendant provides no explanation or argument as to why Plaintiffs' answer to this answer is insufficient.

common law and civil conspiracy claims, then they are not obligated to further respond to Interrogatory Nos. 10 and 14.  Plaintiffs should be barred, however, from hereafter alleging that they relied any specific statements by Defendants.

Defendant includes in her motion to compel Plaintiffs' answers to Interrogatory Nos. 11, 12 and 15 which seek the factual basis for Plaintiffs' UFTA claim.  In answer to Interrogatory Nos. 11 and 12, Plaintiffs referred to their answer to Interrogatory No. 9 in which they describe Defendants' allegedly fraudulent transfers.  Defendant has not demonstrated that the answer to Interrogatory No. 9 is inadequate.  Defendant has not made any argument as to why the answer to Interrogatory No. 15 is inadequate.  Defendant has also not demonstrated that Plaintiffs' answer to Interrogatory No. 13 regarding their allegation that Lisa Rizzolo was part of a civil conspiracy is inadequate. Accordingly, Defendant's motion to compel further responses to Interrogatories Nos 11, 12, 13 and 15 is denied.

Interrogatory Nos. 16-18 ask Plaintiffs to identify documents in their possession and/or that they reviewed prior to entering into the settlement agreement relating to the value of the Crazy Horse Too, the Defendants' financial assets, or the Rizzolo's divorce case.  Plaintiffs objected to these interrogatories based on the attorney-client privilege and work-product doctrine.  Subject to these objections, they answered Interrogatory Nos. 16 and 17 by stating that no such documents exist.  Plaintiffs identified some documents in response to Interrogatory No. 18.  The Court was advised at the hearing that Plaintiffs have provided Defendant with a privilege log regarding their attorney-client privilege and work-product objections.  Defendant does not contend that the attorney-client privilege or work-product doctrine have been improperly asserted.  Accordingly, Defendant's motion to compel further answers to Interrogatory Nos. 16-18 is denied.

Interrogatory No. 19 asks Plaintiffs to identify documents relating to the negotiations, mediations, discussions, etc., that led to the 2006 settlement agreement.  Plaintiffs objected to this interrogatory pursuant to the attorney-client privilege and the work-product doctrine and also on the ground that it is irrelevant.  Non-privileged documents relating to the parties' negotiations and execution of the settlement agreement are relevant to Plaintiffs' assertion that Defendants committed fraud by violating the covenant of good faith and fair dealing in the settlement

10

agreement.  Plaintiffs are therefore ordered to answer and identify documents responsive to this interrogatory.  To the extent they have not already done so, Plaintiffs should also provide a privilege log as to those documents responsive to this interrogatory to which they assert the attorney-client privilege or the work-product doctrine.

Interrogatory Nos. 20-23 ask the Plaintiffs to identify each and every oral discussion, conversation and/or communication that the Plaintiffs had with the FBI, United States Attorneys Office, the IRS and the DEA relating to the federal criminal prosecution of Mr. Rizzolo and the Power Company, Inc.  Interrogatory No. 24 asks Plaintiffs to identify each and every oral discussion, conversation and/or communication that Plaintiffs had with the Las Vegas City Council and Las Vegas City Attorney relating to the Crazy Horse Too.  Plaintiffs objected to these interrogatories on the grounds that they are overbroad, are not reasonably limited in time and scope and are irrelevant.  During the hearing on this motion, Plaintiffs' counsel also indicated that Plaintiffs fully answered questions on these matters during their recent depositions.

As to the issue of relevance and over breadth, the Court again notes the broad basis for Plaintiffs' common law fraud claim – Defendants' alleged violation of the covenant of good faith and fair dealing.  Communications that the Plaintiffs had with U.S. Government representatives regarding the criminal prosecution of Rick Rizzolo and the Power Company, Inc. could lead to admissible evidence regarding the extent to which Plaintiffs were misled by Defendants.  Likewise, communications that Plaintiffs had with representatives of the City of Las Vegas regarding the Crazy Horse Too's business or liquor licenses and payment of their settlement from the sale of that business could lead to the discovery of admissible evidence relevant to the fraud and conspiracy claims.  Plaintiffs' objections to these interrogatories are therefore overruled.  If Plaintiffs fully answered these interrogatories during their depositions, then they may answer Interrogatory Nos. 20-24 by citing the pertinent deposition testimony by page and line numbers.  Otherwise, they are ordered to provide complete answers to Interrogatory Nos. 20-24.

**C.**     **Requests for Production of Documents:**

Defendant also requests an order compelling Plaintiffs to respond to Requests for Production Nos. 1-20.  Request No. 1 requests all documents, including but not limited to checks,

11

records of payments, billing invoices, engagement letters, retainer agreements, calendars, appointment books, and transmittal sheets for services performed on behalf of Kirk Henry in the underlying lawsuit against Mr. Rizzolo and the Power Company, Inc. This request is clearly overbroad because there is no reasonable basis for concluding that all of the documents, or even the listed documents, regarding the Henrys' underlying lawsuit are relevant to the claims and defenses in this case. To the extent any documents from the Henrys' underlying lawsuit are relevant, they appear to be covered by subsequent requests for production. The Court therefore denies Defendant's motion to compel Plaintiffs to respond to such a clearly overbroad request for production.

Request Nos. 2-9 seek all documents relating to the release of all claims/settlement agreement in the Henrys' underlying personal injury action, the plea memorandum in Defendant Rizzolo's criminal prosecution, the settlement agreement and stipulation for forfeiture in the criminal case, documents relating to the settlement or settlement conferences in the underlying civil action, and documents relating to the Rizzolo's divorce. Several of these requests are duplicative of one another. However, to the extent that Plaintiffs are in the possession, custody or control of any non-privileged documents within the scope of these requests, in addition to those that they have already identified and produced, they are ordered to supplement their responses and produce such documents. The Court again takes a broad view of the scope of documents that are subject to production (if they exist) because of the broad nature of Plaintiffs' fraud and conspiracy claims. Defendants are entitled to discover non-privileged documents that were in the possession of the Plaintiffs and their counsel prior to the commencement of this lawsuit which relate to Defendants' assets and financial conditions, including the documents which may reveal what assets the Plaintiffs anticipated would be available to satisfy the balance of the settlement agreement.

Plaintiffs responded to Request Nos 10-16, which seek documents relating to the investigation of the Rizzolos' or their controlled entities' assets or financial conditions, or appraisals of the Crazy Horse business or property, by stating that no documents responsive to the requests exist "at this time." The qualifier "at this time" appears to be the motivating factor in Defendant's motion to compel further responses to these requests. To the extent that Plaintiffs have

12

1  non-privileged documents responsive to these requests, they are ordered to supplement their

2  responses by producing such documents.

3          Request Nos. 17-20 seek production of documents relating to communications between the

4  "subpoenaed party" and the FBI, United States Attorneys Office, the IRS and the DEA relating to

5  the federal criminal prosecution of Mr. Rizzolo and the Power Company, Inc., and Plaintiffs'

6  communications with the Las Vegas City Council and Las Vegas City Attorney relating to the

7  Crazy Horse Too.   The Court construes "subpoenaed party" to refer to the Plaintiffs and their

8  counsel.  As discussed previously in regard to Interrogatory Nos. 20-24, to the extent such non-

9  privileged documents exist, they are relevant to Plaintiffs' allegations that they were misled by the

10  Defendants.  This includes non-privileged communications that may have occurred between

11  Plaintiffs and the subject governmental entities, or between Plaintiffs' counsel and the subject

12  governmental entities, relating to Mr. Rizzolo, the Power Company, Inc. and the Crazy Horse Too.

13  Plaintiffs are therefore ordered to supplement their responses to Request Nos. 17-20.  Accordingly,

14          **IT IS HEREBY ORDERED** that Defendant Lisa Rizzolo's Amended Motion to Compel

15  Answers and Responses to Defendant's First Set of Interrogatories and Requests for Production to

16  Plaintiffs and for Appropriate Sanctions (#401) is **granted**, in part, and **denied**, in part, as follows:

17          1.      Plaintiffs are ordered to provide answers to Defendant Lisa Rizzolo First Set of

18  Interrogatories that are signed under oath by Plaintiffs;

19          2.      Plaintiffs are ordered to answer or supplement their answers to Interrogatory Nos. 1,

20  19, 20-24 in accordance with the provisions of this order; and

21          3.      Plaintiffs are ordered to respond to or supplement their responses to Requests for

22  Production Nos. 2-20 in accordance with the provisions of this order.

23          DATED this 24th day of August, 2010.

24

25                                              _George Foley Jr._

26                                              GEORGE FOLEY, JR.
                                                U.S. MAGISTRATE JUDGE
27

28

                                              13