UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

KIRK AND AMY HENRY,

    Plaintiffs,

vs.

FREDRICK RIZZOLO, aka RICK RIZZOLO, *et al.*,

    Defendants.

Case No. 2:08-cv-00635-PMP-GWF

**ORDER**

**Motion to Compel Discovery (#555)**

       This matter is before the Court on Plaintiffs' Motion to Compel Discovery as to Defendant Kimtran Rizzolo and Request for Sanctions (#555), filed on November 17, 2011; Defendant's Opposition to the Motion to Compel Discovery and Request for Sanctions (#558), filed on November 30, 2011; and Plaintiffs' Reply in Support of Their Motion to Compel and for Sanctions (#562), filed on December 9, 2011.  The Court conducted a hearing in this matter on December 20, 2011.

**BACKGROUND**

       Plaintiffs Kirk and Amy Henry filed an underlying Nevada district court lawsuit against Frederick Rizzolo, aka Rick Rizzolo, and the Power Company, Inc., d/b/a The Crazy Horse Too in October 2001 to recover damages for severe bodily injuries that Kirk Henry sustained when he was allegedly assaulted and battered by agents of Rick Rizzolo and the Crazy Horse Too.  The Henrys subsequently entered into a $10 million settlement with Rick Rizzolo and the Power Company which provided for an initial payment of $1 million and that the $9 million balance would be paid from the proceeds of the sale of the Crazy Horse Too nightclub which was seized by the Federal Government.  The initial payment of $1 million was made to the Henrys.  The City of Las Vegas subsequently revoked the business and liquor licenses of the Crazy Horse Too, and the Henrys were

unable to recover any of the promised settlement proceeds from the sale of that now defunct business.

The Henrys filed this action against Rick Rizzolo, his ex-wife Lisa Rizzolo, and the Rick and Lisa Rizzolo Family Trust on May 16, 2008, alleging that Defendants had engaged in fraudulent transfers of their community assets in an attempt to shield them from Plaintiffs' claim. During the course of discovery in this case, it was revealed that in 2008, Defendant Rick Rizzolo sold his interest in TEZ Real Estate LP ("TEZ"), which operated a "gentleman's club" in Philadelphia, Pa. (also apparently named "Crazy Horse Too"), to his partner Vincent Piazza for $2,999,000.00. Rick Rizzolo received an initial payment of $999,000 from the sale which he transferred to the Cook Islands bank account of the RLR Trust. At Rick Rizzolo's direction, the trustee disbursed $600,000 of the funds to Lisa Rizzolo, $200,000 to Rick Rizzolo's father, Bart Rizzolo, and $100,000 to Rick Rizzolo's lawyers. Another $90,000 was later transferred to a limited partnership that Rick Rizzolo controls.

Rick Rizzolo also assigned the first $789,000 of the remaining payments due from the sale of his interest in TEZ to his father, Bart Rizzolo. Pursuant to this assignment, Vincent Piazza or his agents made monthly payments to Bart Rizzolo in the total amount of $325,513.81. After Bart Rizzolo died in 2010, Mr. Piazza paid another $407,482.22 to Bart Rizzolo's widow, Defendant Kimtran Rizzolo. *See Plaintiff's Motion for Summary Judgment (#554), p. 6; Exhibit 12*, filed November 7, 2011. Neither Rick Rizzolo nor Kimtran Rizzolo have disputed Plaintiffs' allegations regarding the payment of the TEZ proceeds to Bart and Kimtran Rizzolo. *See Defendant Rick Rizzolo's Opposition to Motion for Summary Judgment (#559) and Defendant Kimtran Rizzolo's Opposition to Motion for Summary Judgment (#561).* Defendants contend, however, that the payments were in satisfaction of loans or other debts that Rick Rizzolo owed to Bart Rizzolo and therefore do not constitute fraudulent transfers under NRS 112.180.1 of the Nevada Uniform Fraudulent Transfer Act.[1]

---

[1] Defendant Rick Rizzolo did not disclose his ownership interest in TEZ, the sale of that interest or distribution of the sales proceeds in his initial discovery responses. This information

      Defendant Kimtran Rizzolo ("Kimtran") was joined as a defendant in the Third Amended Complaint (#539), filed on August 1, 2011.  Kimtran filed her Answer (#547) on September 2, 2011.  Plaintiffs served interrogatories and requests for production on Kimtran's attorney on September 9, 2011.  Although Kimtran's counsel asserted that Plaintiffs' counsel granted an extension of time for Kimtran to serve her discovery responses, Plaintiffs' counsel denies that any such extension was granted.  *See Motion to Compel (#555), Exhibits 5* and *6* (letters exchanged between counsel on October 31 and November 1, 2011).  Kimtran served her answers to interrogatories and responses to request for production on November 4, 2011.  *Id. Exhibits 8* and *9*.  Plaintiffs contend that Kimtran waived her right to object to the discovery requests by failing to serve timely objections.  Plaintiffs also contend that Kimtran's responses to other interrogatories and requests for production were non-responsive and inadequate.  Plaintiffs request an order compelling Kimtran to provide full and complete discovery responses without objection.

      Plaintiffs attached a copy of the transcript of Kimtran Rizzolo's October 12, 2011 deposition to their motion.  *Motion (#555), Exhibit 3.*  Plaintiffs point out that despite the fact that the deposition was taken over a month after the written discovery requests were served on her attorney, Kimtran testified that she did not recall ever seeing the discovery requests and she had not been requested to gather any documents.  *Id. pp. 74-81.*  Kimtran also indicated at the beginning of the deposition that she had difficulty understanding English.  *Id. p. 6.*  Plaintiffs' counsel stated that he offered to have a translator present for the deposition, but that Kimtran's lawyer declined.  *Id. p. 8.*  Kimtran thereafter responded to many questions by stating that she did not understand, did not recall or did not know the answer.  Although Kimtran was born in Vietnam, she has resided in the United States since approximately 1980.  *Id. pp. 13-14.*  She worked for many years as a manicurist and owned her own shop. *Id. pp. 20-22.*  When confronted with a contradiction or inconsistency in her answers, Kimtran was apparently able to understand and attempt to correct her

---

only came to light during the course of motions to compel and for sanctions that the Henrys filed.  *See Order (#437)*, filed on August 10, 2010.  Rick Rizzolo also did not disclose these matters to his probation officer as required by the conditions of supervision.  For that and other violations of his probation, he was sent back to prison.

previous responses.  During the deposition Kimtran also testified that she felt dizzy and was not feeling well, but did not wish to postpone the deposition to another day.  *Id. p. 58*.

**DISCUSSION**

Defendant objected to Interrogatory Nos. 2 and 3 and Request for Production No. 6 on the grounds that they are "too broad."  Defendant's attorney failed to establish, however, that he obtained an extension of time from Plaintiffs' counsel to respond to the discovery requests.  Defendant's objections are therefore overruled based on her failure to timely serve  objections.  *See USF Ins. Co. v. Smith's Food and Drug Center, Inc.*, 2011 WL 2457655, *3 (D.Nev. 2011) citing *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).  *See also Sweeney v. UNLV Research Foundation*, 2010 1756875 (D.Nev. 2010), citing *Senat v. City of New York,* 255 F.R.D. 338, 339 (E .D.N.Y.2009).

Defendant's objections are also invalid.  Rule 26(b) of the Federal Rules of Civil Procedure permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party."  The rule contemplates liberal discovery and relevancy under the rule is extremely broad. *See Klein v. Freedom Strategic Partners, LLC*, 2009 WL 1606467, *2 (D.Nev. 2009).  Rule 69(a)(2) also authorizes a judgment creditor to obtain discovery in aid of execution on a judgment.  The scope of post-judgment discovery is "very broad" and the creditor is entitled to obtain information from partes and non-parties alike, including information about assets upon which execution can issue or about assets that have been fraudulently transferred.  *Andrews v. Raphaelson*, 2009 WL 1211136, at *3 (E.D. Ky. 2009), citing *United States v. Conces*, 507 F.23d 1028, 1040 (6th Cir. 2007) and *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559 (S.D.N.Y. 1977).  *See also T-M Vacuum Products, Inc. v. Taisc, Inc.*, 2008 WL 5082413, *2 (S.D.Tex. 2008), citing 3 James Wm. Moore *et al.*, MOORE'S FEDERAL PRACTICE-CIVIL §69.04 (2008) and 12 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE §3014 (1997).

When this action was commenced, the Henrys had not yet obtained a judgment against Defendant Rick Rizzolo in regard to his obligations under the settlement agreement.  The absence of a judgment, however, did not bar Plaintiffs from pursuing this action.  *See Order (#117)*, citing *Farris v. Advantage Capital Corp.*, 170 P.3d 250 (Ariz. 2007) and *Friedman v. Heart Inst. of Port*

4

*St. Lucie, Inc.*, 863 So.2d 189 (Fla. 2003).  The Plaintiffs have since obtained a $9 million Nevada judgment against Defendant Rick Rizzolo.  *See Plaintiffs' Motion for Summary Judgment (#554), Exhibit 2 (copy of Nevada District Court Judgment entered on September 2, 2011)*.  While discovery in this case may not technically be governed by Rule 69(a)(2), its purpose is identical to that generally pursued by a judgment creditor.  Accordingly, the same "very broad" scope of discovery authorized under Rule 69(a)(2) applies in this case.

Plaintiffs' fraudulent transfer claim against Defendant Kimtran Rizzolo is based on more than idle speculation.  It is undisputed that Defendant Rick Rizzolo arranged for nearly $1 million in the proceeds from the sale of his interest in TEZ to be paid to Bart Rizzolo and, after Bart's death, to his widow Defendant Kimtran Rizzolo.  Unless Rick Rizzolo received an equivalent value in exchange for the assignment of these payments, they may be set aside as fraudulent transfers.  *See* NRS 112.190, 112.210 and 112.220.  Plaintiffs are entitled to discover any information or documents in Kimtran Rizzolo's possession, custody or control that relate to the payments, including any alleged antecedent debts that Rick Rizzolo owed to Bart Rizzolo.

Plaintiffs are also entitled to discover the current location of the funds and/or whether Bart or Kimtran Rizzolo made any subsequent transfers of the funds.  Plaintiffs may be entitled to obtain a money judgment against Kimtran if she has transferred or otherwise disposed of the TEZ sales proceeds.  *See* NRS 112.220.2.  Accordingly, information and documents relating to any and all assets in Kimtran's possession, custody or control are relevant and discoverable.  Finally, Plaintiffs are entitled to obtain information and documents in Defendant Kimtran's possession, custody or control that may reveal whether Rick Rizzolo made any other transfers of assets to Bart Rizzolo, Kimtran Rizzolo or others.

It is particularly important in this case that Defendant Kimtran Rizzolo be required to provide complete answers and responses to Plaintiffs' written discovery requests.  During her deposition, Defendant claimed to have difficulty understanding the English language and she repeatedly responded to questions by stating that she did not understand, did not remember or did not know.  Plaintiffs have not moved to compel Kimtran to provide more responsive deposition answers.  Based on her real or feigned inability to understand the English language, and lack of

recollection, a further deposition may not be useful. There is no legitimate reason, however, why Defendant Kimtran Rizzolo cannot provide full and complete responses to Plaintiffs' written discovery requests with the assistance of her counsel and an interpreter, if necessary. The Court cautions Defendant Kimtran Rizzolo that if she fails to comply with this order, she may be subject to appropriate sanctions under Rule 37(b)(2), which can include a citation for contempt of court. *See* Rule 37(b)(2)(A)(vii).

Plaintiffs' motion to compel is somewhat unclear in that it sets forth some discovery requests and responses for which no argument is made that further responses are needed or should be ordered. Interrogatory No. 1, for example, asked Defendant to "[s]tate the full name and present address of each person with whom you have engaged in any partnership, business enterprise or business venture since January 1, 2005." Defendant responded by stating that "[t]here are no persons with whom Defendant engaged in any partnership, business enterprise or joint venture." *Motion to Compel (#555), p. 6.* Plaintiffs' motion makes no argument that this response is untrue or otherwise insufficient. Absent any argument as to why a discovery response is insufficient, the Court will not order Defendant to supplement her response.

**Interrogatory No. 3** asked Defendant Kimtran Rizzolo to "[s]tate the full description and present location and ownership of any asset or property you presently possess. If any such asset or property is not presently owned by you, state the details concerning its disposition by you, including to whom it went, when and for what consideration, including its sales price, if any." Defendant objected to this interrogatory as too broad, and did not answer it in any respect. For the reasons set forth above, Plaintiffs' motion to compel is granted as to Interrogatory No. 3 and Defendant is ordered to provide a full and complete response thereto.

**Interrogatory No. 10** asked Defendant to "[list any property you hold or have held as a trustee of a testamentary or inter vivos trust since September 20, 2001, and identify any trust you have created or contributed to for the benefit of others since September 20, 2001. Defendant responded: "None to the best knowledge of Defendant."

**Request for Production No. 4** asked Defendant to "[p]roduce all documents which reflect, refer, or relate to any trust under which you are or was a settler or beneficiary, at any time since

1  January 1, 2005 to the present.  Defendant responded: "Defendant is unaware of any trust in which
2  she was named as beneficiary or settler.  There are no documents to produce."
3        Plaintiffs point out that these responses are untruthful because Defendant testified at her
4  deposition that she has a living trust and she has produced a deed for her residence which is owned
5  by the "Kimtran Rizzolo Living Trust." *Motion (#555), p. 20, Exhibit 3, pp. 85-86, and Exhibit 13*.
6  Given this information, Defendant is ordered to supplement her responses to Interrogatory No. 10
7  and Request for Production No. 4 and provide true and complete information and documents in
8  response thereto.  If Defendant does not have the original or a copy of the trust documents in her
9  actual possession, she should obtain them from the trustee or attorney who prepared the trust.  If
10 Defendant is still unable to produce documents in response to Request No. 4 or other requests for
11 production discussed in this order, then she must explain in reasonable factual detail the efforts that
12 she has made to obtain the requested information and documents and why she is unable to provide
13 them.
14       **Interrogatory No. 11** asked Defendant to "[s]tate whether you are an heir-at-law or
15 beneficiary under the terms of the will of any person and list the terms of your entitlement under
16 such will."  In response to this interrogatory, Defendant referred Plaintiffs to the Will of Bart
17 Rizzolo that was produced in response to **Request No. 12.**  Plaintiffs state, however, that
18 Defendant did not produce the instructions referred to in the Will regarding the distribution of the
19 decedent's property or explain the contents of those instructions.  *Motion (#555), pp. 20-21.*
20 Defendant is ordered to supplement her responses to Interrogatory No. 11 and Request for
21 Production No. 12 and provide a  full and complete copy of the Will, including the instructions for
22 distribution of the decedent's property.
23       **Interrogatory No. 16** asked Defendant to [i]dentify if you have, at any time since January
24 1, 2005, entered into any transaction with Bartholomew Rizzolo, Rick Rizzolo, Lisa Rizzolo or any
25 other relative involving the transfer, conveyance, assignment, gift or other disposition of real or
26 personal property and describe the terms thereof."  Defendant responded: "To the best knowledge
27 and interpretation of the wording of the Interrogatory herein, Defendant has not entered into any
28 transaction."  Defendant's response is evasive since it is unclear what interpretation she or her

attorney places on the wording of this interrogatory.  The Interrogatory broadly requests a description of any transactions involving the transfer, conveyance, assignment, gift or other disposition of real or personal property with the listed individuals during the stated time period.  Again the scope of discovery in the context of the claims in this case is very broad.  Defendant is ordered to respond to Interrogatory No. 16, without evasion or qualification, and describe any and all transactions that fall within the scope of the interrogatory.

**Interrogatory No. 20** asked Defendant to "[i]dentify any and all attorneys retained or paid for by you for the benefit of Bartholomew Rizzolo, Rick Rizzolo, Lisa Rizzolo, or any other relative and describe the terms of the arrangement."  Defendant responded: "To the best knowledge of Defendant, she has not retained any attorney for Bartholomew Rizzolo, Rick Rizzolo and/or Lisa Rizzolo."

**Interrogatory No. 20** asks a compound question.  Defendant answered only the first part of the question–whether she had *retained* any attorney for the benefit of the listed individuals.  She did not answer the second part of the question, which asked her to identify any lawyers whom she *paid* for the benefit of the listed individuals.  Defendant testified during Rick Rizzolo's probation revocation hearing that she paid his legal bills on demand.

In her response to Interrogatory No. 21 which asked Defendant to "[i]dentify any and all financial obligations, debts, liabilities and responsibilities assumed by you on behalf of Bartholomew Rizzolo, Rick Rizzolo, or Lisa Rizzolo since January 1, 2005," Defendant stated: "My husband, Bart Rizzolo owed money to Rick Rizzolo for purchase of jewelry and directed his wife (Defendant) to pay the obligation by transferring monies owed by Rick Rizzolo for attorney's fees to Kenneth Frizzell, Esq. and Gordon & Silver, Esq."  This information should also have been provided in response Interrogatory No. 20 which specifically asks about the payment of attorney's fees on behalf of others, including Rick Rizzolo.  In response to either Interrogatory Nos. 20 or 21, Defendant should provide complete information regarding the "terms of the arrangement" regarding her payment of attorney's fees, including the amount of such payments, and all information that Defendant has regarding the alleged debt that Rick Rizzolo owed to Bart Rizzolo

for the purchase of jewelry.[2]  The Court therefore orders Defendant to supplement her response to Interrogatory No. 20 and provide complete information relating to her payment of Rick Rizzolo's attorney's fees.

**Request for Production No. 17** asked Defendant to "[p]roduce documents which record, reflect, refer or relate to the payment of legal bills, restitution of any other debts, liabilities or financial obligations on behalf of Rick Rizzolo since January 1, 1995."  Defendant responded to this requests by referring to her response to Request No. 13 in which she stated: "No documents are in possession of Defendant."

Unless Defendant paid Rick Rizzolo's attorney's fees in cash and received no receipt, there should be documents in Defendant's possession, custody or control, such as cancelled checks, bank statements, or receipts reflecting such payments.  There may also be other documents concerning the payment of the fees or the alleged underlying debt obligation.  Because there is no reasonable assurance that Defendant has made a diligent effort to locate responsive documents in her possession, custody or control, there is also no reason to believe that such documents do not exist or that Defendant cannot produce them.  Defendant is ordered to supplement her response to Request No. 17 and produce any and all documents in her possession, custody or control that are within the scope of this request.

**Interrogatory Nos. 21, 22, 23, 24 and 25.**  As discussed above, Interrogatory No. 21 asked Defendant to "[i]dentify any and all financial obligations, debts, liabilities and responsibilities assumed by you on behalf of Bartholomew Rizzolo, Rick Rizzolo, or Lisa Rizzolo since January 1, 2005."  The only information Defendant provided in response to this interrogatory was her payment of attorney's fees on behalf of Rick Rizzolo.

Interrogatory No. 22 asked Defendant to "[i]dentify any and all contracts, business arrangements, entitlements, assignments, or cash inflows entered into or assumed by you on behalf

---

[2] It does not escape the Court's notice that Defendants make apparently conflicting assertions by, on the one hand, claiming that Rick Rizzolo assigned his interest in the sales proceeds of TEZ to Bart Rizzolo in payment of antecedent debts, and, on the other hand, claiming that Kimtran Rizzolo paid Rick Rizzolo's legal bills because Bart Rizzolo owed him money.

of Bartholomew Rizzolo, Rick Rizzolo, or Lisa Rizzolo since January 1, 2005." Plaintiff responded to this interrogatory by referring to her response to Interrogatory No. 21.[3]

As Plaintiffs point out in their motion, it is undisputed that Rick Rizzolo assigned the proceeds from the sale of his interest in TEZ to his father Bart Rizzolo in 2008. After Bart Rizzolo died in 2010, Defendant Kimtran Rizzolo sent a letter to the representative of the purchaser of TEZ notifying her of Bart Rizzolo's death and requesting that all further checks be paid to Defendant as executrix of Bart Rizzolo's estate. *Motion (#555), p. 18, Exhibit 10.* Obviously, this information falls within the scope of Interrogatory No. 22 and should have been provided in response thereto. Defendant's failure to provide responsive information about known transactions, including matters that were inquired into during her deposition on October 12, 2011, demonstrates that Defendant has not made an adequate effort to provide complete discovery responses. The Court therefore orders Defendant to supplement her response to Interrogatory Nos. 21 and 22 and provide truthful and complete information in response thereto.

**Interrogatory No. 23** asks Defendant to "[i]dentify and describe your involvement in the business entity styled TEZ Real Estate LP." Interrogatory No. 24 asked Defendant to "[i]dentify and describe your involvement in the Crazy Horse Too in Philadelphia, Pennsylvania." Defendant responded to both of these interrogatories with the one word answer: "None." Defendant's responses may be accurate and sufficient so long as she had no involvement or relation to TEZ or the Crazy Horse Too in Philadelphia, other than her receipt of payments resulting from Rick Rizzolo's assignment of proceeds of the sale of his interest in TEZ. Defendant is only required to supplement her answers to the Interrogatory Nos. 23 and 24 if she had some other or additional involvement with TEZ or the Crazy Horse Too in Philadelphia.

**Interrogatory No. 25** asks Defendant to "[i]dentify and describe your relationship including all business dealings with Vincent Piazza, Stuart Cohen, and the Piazza Family Limited

---

[3] It is improper to answer an interrogatory by simply referring to an answer to another interrogatory. Rule 33(b)(3) states that each interrogatory must be answered separately and fully in writing under oath. *See also Equal Rights Center v. Post Properties, Inc.*, 246 F.R.D. 29, 24 (D.D.C. 2007) and *Landon v. Ernst & Young LLP*, 2009 WL 4723708, *2 (N.D.Cal. 2009).

Partnership or any owner, member, employee or agent thereof." Defendant also responded "None." It is the Court's understanding that Vincent Piazza, Stuart Cohen, and the Piazza Family Limited Partnership were the co-owners or partners with Rick Rizzolo in TEZ. Defendant had at least some relationship with one or more of these individuals or the entity as it relates to her receipt of payments pursuant to the assignment of the proceeds from the sale of Rick Rizzolo's interest in TEZ. Defendant should include that information in a supplemental response and identify and describe any other relationship or business dealings, if any, that she had with the listed individuals, entity or their agents. Accordingly, Defendant is ordered to supplement her response to Interrogatory No. 25.

**Request for Production Nos. 1 and 9.** Request No. 1 requested Defendant to "[p]roduce all documents including but not limited to statements of account with securities brokerage firms, dividend statements, earning reports, or similar documents which reflect, refer, or relate to any stocks, bonds, debentures, certificates of deposit, or any other security owned by you either alone or jointly with another person at any time since January 1, 2005 to the present date." Defendant responded to this request as follows: "Annuities, Met Life, Prudential and Transamerica attached hereto. No documents are in the possession of defendant."

Request No. 9 requested Defendant to "[p]roduce documents which record, refer, or relate to your domestic and/or foreign bank accounts, regardless of whether the same are held in sole or joint names since January 1, 2005." Defendant responded to this request as follows: "Defendant has no documents as requested in this request but has accounts in Nevada State Bank, City National Bank, and Bank of America."

Plaintiffs state that while they have obtained some documents from financial institutions through use of third party subpoenas, they have not received the investment or bank records for most of Defendant's accounts which allegedly hold millions of dollars. *Motion (#555), p. 19.*

As the court recently stated in *United States v. Approximately $7400 in United States Currency*, 274 F.R.D. 646, (E.D.Wis. 2011):

> "[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or has the

11

legal right to obtain the documents on demand." *Walls v. Paulson,* 250 F.R.D. 48, 50 (D.D.C.2008) (citing *In re Bankers Trust Co.,* 61 F.3d 465, 469 (6th Cir.1995); *Kifle v. Parks & History Ass'n,* No. Civ. A. 98–00048(CKK), 1998 WL 1109117, at *1 (D.D.C. Oct. 15, 1998)). A party is obligated to produce her account records when she has the legal right to those records even though the party does not have a copy of the records. *See Cohn v. Taco Bell Corp.,* No. 92 C 5852, 1994 WL 383983, at *4 (N.D.Ill. July 20, 1994); *Zervos v. S.S. Sam Houston,* 79 F.R.D. 593, 595–96 (S.D.N.Y.1978). *See also, Preservation Prods., LLC v. Nutraceutical Clinical Labs. Int'l,* 214 F.R.D. 494, 495 (N.D.Ill.2003).

Defendant is ordered to supplement her responses to Requests for Production Nos. 1 and 9 and produce full and complete records for all financial investments and/or accounts within the scope of the requests. To the extent that this requires the Defendant to request records from the financial institutions in which such investments or accounts are held, she is ordered to promptly do so.

**Plaintiffs' Request for Sanctions.**

Plaintiffs request that Defendant Kimtran Rizzolo be sanctioned pursuant to Rule 37(a) for her failure to sufficiently respond to Plaintiffs' discovery requests. The Court will exercise its discretion under Rule 37(a)(5)(C) and not impose an award of attorney's fees or other sanctions on Defendant at this time. Defendant is cautioned, however, that if she fails to fully and reasonably comply with this order, the Court will impose sanctions for such failure including, but not limited to, awarding Plaintiffs the expenses they incurred in prosecuting the instant motion to compel as well as any future motion, together with other sanctions pursuant to Rule 37(a)(2), as may appear proper.

**CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel Discovery as to Defendant Kimtran Rizzolo and Request for Sanctions (#555) is **granted** in accordance with the foregoing provisions of this order. Defendant Kimtran Rizzolo shall serve fully responsive supplemental responses to the Interrogatories and Requests for Production discussed in this order on or before **January 13, 2012**. To the extent that Defendant, after exercising due diligence, cannot produce all required information and documents by this deadline, she shall state in her responses the efforts she . . .

has made to comply and shall promptly further supplement her responses as soon as additional information or documents are obtained.

DATED this 3rd day of January, 2012.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge